STATE of Wisconsin, Plaintiff-Respondent,

v.

Ralph E. ADAMS, Defendant-Appellant.

Court of Appeals

*No. 97–1926–CR. Submitted on briefs June 4, 1998.—Decided July 15, 1998.*

(Also reported in 584 N.W.2d 695.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Scott F. Anderson, Law Office of Scott F. Anderson* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle,* attorney general and *James M. Freimuth,* assistant attorney general.

Before Snyder, P.J., Brown and Anderson, JJ.

ANDERSON, J. Ralph E. Adams appeals from an amended judgment of conviction for one count of misconduct in public office in violation of § 946.12(2),

STATS., and an order denying his postconviction motion. On appeal, Adams challenges his counsel's effectiveness relating to (1) his prearrest silence, (2) evidence relating to his job performance, (3) a witness' comment regarding the victim, and (4) evidence of threats to a witness, and he questions the propriety of the assistant district attorney's closing argument. We reject Adams' claims and affirm the judgment and the order.

## FACTS AND PROCEDURAL BACKGROUND

Adams was originally charged in a six-count indictment for two alleged incidents involving two juvenile females who were temporarily detained at the Racine County Juvenile Detention Center (RJDC) where Adams was employed as a staff member. The information alleged in count one that as a supervisor at the RJDC, Adams called one of the juveniles, who was fifteen at the time, into his office and sought to engage in sexual activities with her. The misconduct charge, count two, was premised on allegations that Adams used his supervisory position to attempt to solicit sex from the juvenile, a detainee.

Adams pled not guilty and the matter proceeded to trial.[1] The jury acquitted Adams of the child enticement charge, but found him guilty of misconduct by a public employee as charged in count two. Adams was sentenced to a two-year stayed prison term and the trial court placed him on probation for three years with the first twelve months to be served in jail. Subsequently, Adams filed a postconviction motion alleging ineffective assistance of counsel. The trial court denied

---

[1] Prior to trial, counts three through six of the information involving the other juvenile were dismissed. The State proceeded to trial on counts one and two charging child enticement and misconduct in public office.

5

the motion and Adams appeals. Additional facts will be included within the body of the decision as necessary.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Adams claims ineffective assistance of counsel. He argues that his trial counsel was ineffective for not objecting to evidence relating to Adams' prearrest silence, his job performance, a witness' comments regarding the victim and threats to a witness. We will address each argument separately.

■

In order to prevail on a claim of ineffective assistance of counsel, Adams must satisfy the two-pronged test set forth in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Adams must show that his counsel's performance was deficient and that it resulted in prejudice to his defense. *See id.* In reviewing a trial court's decision on a claim of ineffective assistance of counsel, we accept its findings of fact unless they are clearly erroneous. *See* § 805.17(2), STATS. However, we review the determination of whether counsel's performance was deficient and prejudicial independently of the trial court. *See State v. Johnson*, 153 Wis. 2d 121, 128, 449 N.W.2d 845, 848 (1990).

### *Prearrest Silence*

■

Adams first argues that his trial counsel was ineffective for failing to object to the admission of Adams' "prearrest silence." Whether Adams' right to remain silent was violated is a question involving the application of constitutional principles to undisputed facts which we review de novo. *See State v. Pheil*, 152 Wis. 2d 523, 530, 449 N.W.2d 858, 861 (Ct. App. 1989).

In this case, the jury heard testimony that shortly after Adams' supervisors, Odise Bennett, superintendent of RJDC, and Robert Barbee, division manager for the Human Services Department, learned of the allegations that he solicited sex from a female juvenile detainee, they summoned him to a mandatory meeting "regarding some allegations at the detention center." Adams failed to attend the meeting. As a result, he was fired the next morning. Letters sent to Adams informing him of this termination were returned unopened.

The State attempted to include a jury instruction regarding flight from custody, but the trial court refused to allow it. The court did permit the State to argue from the evidence that Adams' failure to attend the mandatory meeting with his supervisors or to contact them about his termination reflected on his guilt.

Adams argues that the evidence relating to his failure to appear at the mandatory meeting and the State's summation were impermissible comments on the invocation of his state and federal constitutional rights to remain silent and were improperly put before the jury. He insists that his trial counsel's failure to object to the admission of this evidence, as well as to the State's closing argument, constituted deficient, prejudicial performance.

The privilege against self-incrimination is guaranteed by Article I, Section 8 of the Wisconsin Constitution and under the Fifth Amendment of the United States Constitution. *See State v. Brecht*, 143 Wis. 2d 297, 310, 421 N.W.2d 96, 101 (1988). The use of a defendant's silence for impeachment purposes has been long decided. It has been held improper for the State to comment upon a defendant's choice to remain silent at or before trial. *See Miranda v. Arizona*, 384 U.S. 436, 468 n.37 (1966) (defendant claiming privilege

in face of accusation); *Griffin v. California*, 380 U.S. 609, 615 (1965) (constitutional error to use nontestifying defendant's silence against him or her at trial); *Doyle v. Ohio*, 426 U.S. 610, 619 (1976) (constitutional error to impeach a defendant with his or her postarrest, post-*Miranda* silence). However, when a defendant elects to testify, references by the State during cross-examination, on redirect and in closing arguments to the defendant's pre-*Miranda* silence do not violate the defendant's right to remain silent. *See Jenkins v. Anderson*, 447 U.S. 231, 238 (1980) (use of prearrest silence to impeach defendant does not violate Fifth Amendment); *State v. Sorenson*, 143 Wis. 2d 226, 258, 421 N.W.2d 77, 90 (1988) (same); *Fletcher v. Weir*, 455 U.S. 603, 607 (1982) (per curiam) (use of postarrest, pre-*Miranda* silence to impeach testifying defendant does not violate due process).

In contrast, whether prearrest silence may be used as substantive evidence of a defendant's guilt when the defendant does not testify is much less clear. The United States Supreme Court has not yet addressed this issue. *See Jenkins*, 447 U.S. at 236 n.2 ("Our decision . . . does not consider whether or under what circumstances prearrest silence may be protected by the Fifth Amendment.").

Federal and state courts are split on whether prearrest silence can be used as substantive evidence of guilt. Many courts have concluded that the Fifth Amendment precludes the substantive use of any silence exercised by the defendant. *See, e.g., United States v. Burson*, 952 F.2d 1196, 1200–01 (10th Cir. 1991); *Coppola v. Powell*, 878 F.2d 1562, 1567–68 (1st Cir. 1989); *United States ex rel. Savory v. Lane*, 832 F.2d 1011, 1018 (7th Cir. 1987); *State v. Easter*, 922 P.2d 1285, 1290–91 (Wash. 1996). In contrast, several

8

courts have held that evidence of an accused's prearrest silence does not violate the Fifth Amendment in the absence of government compulsion to speak or remain silent prior to arrest. *See, e.g., United States v. Zanabria,* 74 F.3d 590, 593 (5th Cir. 1996); *United States v. Rivera,* 944 F.2d 1563, 1568 (11th Cir. 1991); *Coates v. United States,* 705 A.2d 1100, 1104–05 (D.C. 1998); *State v. Dreher,* 695 A.2d 672, 704–06 (N.J. Super. Ct. App. Div. 1997) *cert. denied,* 118 S. Ct. 2353 (1998); *State v. Kiser,* 683 A.2d 1021, 1029 (Conn. App. Ct. 1996), *cert. denied,* 117 S. Ct. 1478 (1997); *State v. Houle,* 642 A.2d 1178, 1181 (Vt. 1994).

■ The Wisconsin Supreme Court seems to have aligned itself with those courts which have held that the Fifth Amendment bars substantive use of a defendant's prearrest silence that is induced by or in response to governmental action. Our supreme court has stated that the right to silence is derived from the privilege against *compelled* self-incrimination; therefore, absent circumstances that might *compel* a reasonable person to speak and incriminate himself or herself, the privilege does not arise. *See Brecht,* 143 Wis. 2d at 312, 421 N.W.2d at 102. If a situation is neither coercive nor curtails one's freedom of action, our supreme court has held that the right to silence is not implicated. *See id.* If a defendant was silent in circumstances which did not trigger his or her right against compelled self-incrimination, the prosecution is free to comment on, or elicit testimony of, that silence. *See id.*

We conclude that Adams' right to silence was not implicated by his refusal to meet with his supervisors to discuss some allegations at the detention center. Quite simply, Adams' "prearrest silence" did not arise

in the face of law enforcement questioning or even in the context of a criminal investigation. In fact, Bennett admitted that he did not explain to Adams what they intended to discuss at the meeting. Although Adams was employed by the RJDC, the mandatory meeting was not instigated as a criminal investigation; rather, it was employment related.

Despite the mandatory nature of the meeting, a reasonable person in Adams' position would not conclude that the meeting would be coercive or in any way curtail his or her freedom of action. *See id.* It simply was not a situation that might compel a reasonable person to speak and incriminate himself or herself. *See id.* Because Adams was silent in circumstances which did not trigger his right against compelled self-incrimination, the State was free to comment on, or elicit testimony of, that silence.[2] *See id.*

██

We conclude that the privilege against compelled self-incrimination did not arise when Adams was summoned to the mandatory meeting with his supervisors that he chose not to attend. Thus, the testimony elicited from his supervisors at trial which was related to Adams' failure to attend the meeting did not violate Adams' rights under either the Wisconsin or United States Constitutions. Nor did the prosecutor's comments during closing argument violate his constitutional right to remain silent. It also follows that Adams' trial counsel was not ineffective for failing

---

[2] Similarly, if an officer of a bank were to summon a teller into a meeting to discuss shortages in the till, as long as there is not a police investigation, i.e., governmental action, the teller's failure to appear would be available as substantive evidence of guilt.

10

to object to the testimony or to the closing argument by the State.

## Evidence Relating to Job Performance

Adams also claims that his trial counsel was ineffective for not objecting to the admission of evidence which related to Adams' job performance—evidence of violations of written rules and regulations. Adams maintains that the prosecution was allowed to present testimony that his actions while on the job did not comport with the requirements or policies of the detention center or the administrative code. He insists that counsel's failure to object to this evidence "allowed the prosecution to paint such a negative picture of Adams that even though the child enticement case was weak, [the jury] could convict Adams for just being a bad worker."

At the *Machner*[3] hearing, Adams' trial counsel testified that his theory of defense was that if he could obtain an acquittal on the enticement charge, Adams would also prevail on the misconduct charge involving the juvenile. Because the information relating to Adams' job performance had no bearing on the child enticement charge, his main concern, and because counsel did not consider it harmful even though it was irrelevant, he elected not to object to it.

Our supreme court has stated that it disapproves of postconviction counsel second-guessing trial counsel's considered selection of trial tactics or the exercise of professional judgment in the face of alternatives that have been weighed by trial counsel. *See State v. Felton*, 110 Wis. 2d 485, 502, 329 N.W.2d 161, 169 (1983). This

---

[3] *State v. Machner*, 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).

court will not find ineffective assistance of counsel even though in hindsigh it is apparent that a more appropriate decision could have been made. *See id.*

Adams was charged with child enticement and misconduct in public office for using his public employee position to solicit sexual contact with the juvenile. The jury was instructed that to find Adams guilty of count one it must be satisfied that he caused the juvenile to go into a room with intent to have sexual contact with her and that she was not yet eighteen years old. To find him guilty of count two, the jury had to be satisfied beyond a reasonable doubt that Adams was a public employee, who in such capacity used his position to solicit sexual contact with a juvenile and that he knew such conduct was in excess of his authority. The evidence relating to Adams' job performance was unrelated to these charges. Even so, we do not view trial counsel's strategy not to object to this evidence as inappropriate. Counsel's strategy was to focus the jury's attention on the lack of evidence of the enticement charge which he believed would lead to an acquittal on both charges. Trial counsel is free, after considered judgment, to select a particular tactic among available alternatives. *See id.* at 501–02, 329 N.W.2d at 169.

In addition, the jury received instructions that the charge of misconduct in public office was based on the juvenile's allegation that Adams "used his public employee position to solicit sexual contact with [the juvenile], a child, as prohibited by law, which act he knows is in excess of his lawful authority." Jurors are presumed to follow the court's instructions. *See State v. Truax*, 151 Wis. 2d 354, 362, 444 N.W.2d 432, 436 (Ct. App. 1989). Thus, we reject Adams' claim that the jury

found him guilty of misconduct in office because he was "a bad worker."

Further, in reviewing a claim of ineffective assistance of counsel, we may avoid the deficient performance analysis if the defendant has failed to show prejudice. *See State v. Wirts*, 176 Wis. 2d 174, 180, 500 N.W.2d 317, 318 (Ct. App. 1993). The defendant must affirmatively prove prejudice; mere speculation is insufficient. *See State v. Pitsch*, 124 Wis. 2d 628, 641, 369 N.W.2d 711, 718 (1985). To establish prejudice under *Strickland*, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 694. A reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome." *Id.* The touchstone of the prejudice component is "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *State v. Smith*, 207 Wis. 2d 258, 276, 558 N.W.2d 379, 387 (1997) (quoted source omitted).

As the trial court noted at the postconviction hearing, there was an abundance of testimony in support of the conviction on the second count. The court viewed the juvenile as a very credible witness in her accusation that Adams tried to solicit her to commit sexual acts. In addition, both Betty Olsen, a detention center employee, and another juvenile detainee verified that she met with Adams on the night in question. Whether Adams *caused* her to go to his office with the *intent* to have sexual contact with her was left in doubt, thus leaving the enticement charge in doubt as well. Even

13

so, the evidence overwhelmingly supports the misconduct charge and we cannot say that the outcome would have been different even if trial counsel objected to the evidence relating to Adams' job performance. Adams has failed to prove that counsel's performance, if it was deficient, was prejudicial.[4]

### Evidence of Threats to Witness

Adams next argues that the admission of testimony that Olsen received telephone threats should have been objected to because it was irrelevant, constituted evidence of "bad acts" and was improper hearsay evidence. Adams contends that his counsel's failure to object to this evidence constituted ineffective assistance of counsel.

Not only does Adams mischaracterize the import of Olsen's testimony, but he ignores the clear objection made by his counsel. Olsen was called as a witness for the defense. On cross-examination by the prosecutor, Olsen was asked, "[Y]ou've been threatened in regard to this case, haven't you . . . [a]nd you received numerous threats which you've documented with the sheriff's department?" Olsen responded in the affirmative. At this point, counsel objected and proceedings were held outside the presence of the jury. The court determined that the telephonic threats were material to Olsen's motivation and the credibility of her testimony but that

---

[4] Adams has characterized the violations as inadmissible other acts evidence. Because Adams has failed to prove that he was prejudiced by his counsel's failure to object to this evidence, we will not address this argument. *See Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983) (if a decision on one point disposes of an appeal, we need not decide other issues raised).

14

three other incidents were not relevant to the proceedings.

Questioning by the State revealed that Olsen had received telephonic threats from a young, unidentified male telling her to get her story straight, to defend the right person and stating, "[W]e know where you work and when you leave." Olsen also testified that despite the threats she did not change her story, the threats did not affect her ability to testify and everything she testified to was true. And in response to the prosecutor's question, "Isn't it true that you really felt that these threats were compelling you to testify on [Adams'] behalf?" Olsen answered "no."

The trial court properly allowed limited use of the evidence of threats made to Olsen. The admissibility of evidence lies within the sound discretion of the trial court, and this court will not interfere with its ruling unless it represents a misuse of discretion. *See State v. Kuntz*, 160 Wis. 2d 722, 745–46, 467 N.W.2d 531, 540 (1991). We agree that the evidence of threats was relevant to the issue of Olsen's credibility. *See Meunier v. State*, 46 Wis. 2d 271, 279, 174 N.W.2d 277, 282 (1970) (threats presented a question of credibility for trier of fact). We also do not believe that the evidence constituted inadmissible hearsay because it was not introduced to prove the truth of any statement allegedly made by the caller who threatened Olsen. *See* § 908.01(3), STATS. Rather, it was introduced to show that threats were made which would reflect on Olsen's credibility.

Moreover, the evidence was not linked to Adams and was not unfairly prejudicial to the defense. As noted by the State, Olsen consistently disputed the

15

juvenile's version of how and when she met up with Adams on the night in question. Thus, evidence that Olsen had been cautioned to change her testimony created an inference that it was someone connected to the juvenile making the threatening phone calls—whose parents were pursuing a civil claim against Racine County—not Adams. And Olsen testified to this effect: she believed the threats were coming from the complainant and not Adams. Adams fails to explain how the inference from this evidence either reflects badly on his character or prejudiced his case. We conclude that Adams has failed to establish that counsel's performance was either deficient or prejudicial such that a new trial is warranted.

### Witness' Comment on Victim

Adams also contends that his trial counsel was ineffective for failing to move for a mistrial after a witness testified to the veracity of the victim. During trial, Fred Evans, an aftercare worker from Professional Service Group to whom the juvenile reported the alleged incident with Adams, was asked to describe his relationship with her. He responded, "We had a very positive client-worker relationship. She was going through . . . a lot of emotional things . . . and I was just there to add support for the family and for her, and to me she had always been honest and has always informed me of anything that was going on." Defense counsel objected, and the trial court sustained the objection and instructed the jury to "disregard the last statement by the witness."

Adams now claims that his trial counsel was ineffective for failing to move for a mistrial based on Evans' testimony. "Even more disconcerting is [trial counsel's] failure to request a mistrial, let alone object, to numer-

16

ous comments made by the prosecutor during closing that certain witnesses were honest and others were liars."

We are unpersuaded. A motion for a mistrial is not warranted unless, in light of the entire proceeding, the basis for the mistrial motion is sufficiently prejudicial to warrant a new trial. *See State v. Bunch*, 191 Wis. 2d 501, 506, 529 N.W.2d 923, 925 (Ct. App. 1995). However, not all errors warrant a mistrial and "the law prefers less drastic alternatives, if available and practical." *Id.* at 512, 529 N.W.2d at 927. A mistrial is appropriate only when a "manifest necessity" exists for the termination of the trial. *See id.* at 507, 529 N.W.2d at 925 (quoted source omitted). Here, Adams has failed to show a reasonable probability that a mistrial was warranted or would have been granted. Thus, defense counsel's failure to move for a mistrial was not prejudicial. Furthermore, any prejudicial effect that might have flowed from the testimony was cured by the court's immediate instruction to the jury to disregard the testimony in its entirety. *See State v. Medrano*, 84 Wis. 2d 11, 25, 267 N.W.2d 586, 592 (1978).

We also reject Adams' complaint that his trial counsel was ineffective for failing to object to the prosecutor's comments on witnesses during closing arguments. First, a prosecutor is permitted to comment on the credibility of witnesses as long as that comment is based on evidence presented. *See State v. Draize*, 88 Wis. 2d 445, 455, 276 N.W.2d 784, 789 (1979); *Johnson*, 153 Wis. 2d at 132 & n.10, 449 N.W.2d at 850. Moreover, the court's admonitory instruction that any remarks by the attorneys implying the existence of certain facts not in evidence were to be

disregarded is similarly presumed to have eliminated any prejudice. *See State v. Jennaro,* 76 Wis. 2d 499, 508, 251 N.W.2d 800, 804 (1977). Adams has also failed to show that, had his counsel acted differently, there was a reasonable probability that the outcome of his trial would have been different. Because we conclude that Adams has failed to prove prejudice, we need not examine whether he has established deficient performance. *See Strickland,* 466 U.S. at 697.

### PROSECUTOR'S CLOSING ARGUMENT

Adams' final argument, which is unrelated to the ineffective assistance of counsel claims, is that the prosecutor's closing argument denied him a fair trial:

> You know, I think Fred Evans summed up this case the best when he testified . . . when questioned what had happened, he said it's an injustice. . . . I can't find [Adams] guilty. The judge can't. . . . It's up to you to decide whether or not he's guilty. If you don't return guilty verdicts, it will be an injustice. Thank you.

Because Adams did not object to the statement, the State argues waiver. ▪

Although Adams does not address this point, it is well established that failure to make a contemporaneous objection or to move for a mistrial in the trial court waives the issue. *See State v. Goodrum,* 152 Wis. 2d 540, 549, 449 N.W.2d 41, 46 (Ct. App. 1989). Nonetheless, Adams claims that for the prosecutor to "tell the jury that anything but guilty verdicts would be unjust is to tell them to base a verdict on passion, sympathy or prejudice, not on the evidence before it" and it was improper.

18

"Closing argument is the lawyer's opportunity to tell the trier of fact how the lawyer views the evidence and is usually spoken extemporaneously and with some emotion." *Draize*, 88 Wis. 2d at 455–56, 276 N.W.2d at 790. A prosecutor's closing argument is improper when it so infects the trial with unfairness as to make the conviction a denial of due process. *See State v. Wolff*, 171 Wis. 2d 161, 167, 491 N.W.2d 498, 501 (Ct. App. 1992). A prosecutor may comment on the evidence, detail the evidence, argue from it to a conclusion, and state that the evidence convinces him or her and should convince the jurors. *See Draize*, 88 Wis. 2d at 454, 276 N.W.2d at 789. The prosecutor may not, however, suggest that the jury arrive at its verdict by considering factors other than the evidence. *See id.*

We are unconvinced that the prosecutor's comment was improper. Taken in context, the comment was nothing more than the prosecutor's summation of the case. The prosecutor had previously detailed the evidence and argued from it to, in his opinion, the appropriate conclusion. *See id.*

Further, the court instructed the jury that counsel's closing argument was not evidence, but opinions, and that the jury should draw its own conclusions from the evidence. The court also cautioned the jury that it was "to decide this case fairly and impartially, without fear or favor, and without passion or prejudice." The court's instructions put the comment in proper perspective. *See id.* at 456, 276 N.W.2d at 790. Thus, in light of the entire trial, we conclude that the prosecutor's remark did not deprive Adams of a fair trial.

*By the Court.*—Judgment and order affirmed.