PER CURIAM.
¶1 John Childress appeals from a judgment convicting him of repeated sexual assault of a child and from the order denying his motion for postconviction relief.[1] Childress argues here that the trial court erroneously denied his motion for a mistrial and that his trial attorney was ineffective at sentencing. His arguments do not persuade us. We affirm.
¶2 Childress was charged with sexually assaulting QMS[2] on four occasions over an eighteen-month period when she was between ten and twelve years old. Childress was a friend of QMS's stepfather. Childress and his girlfriend, Tykinna Williams, lived with QMS's family.
¶3 The complaint alleged that QMS told her mother, TA, about the first assault. TA confronted Childress. When he "started swearing that [QMS] was lying," TA began to doubt her. QMS recanted and the police were not notified. After the fourth incident, QMS told her stepfather about the assaults. Childress was arrested and charged the next day.
¶4 At trial, QMS testified that Williams was present when TA confronted Childress and, for the first time, said Childress told Williams "to make sure that my mama didn't call the police." QMS continued, saying Williams then told her not to "tell on him no more because he-he hit her again like because when I told, he had pushed her through glass," and urged her to "just say that I was telling a story" because Williams "didn't want to get beat on no more." QMS explained that the reason she had told her mother she had lied was that she felt bad for Williams, of whom she was fond.
¶5 At that point, the defense moved for a mistrial, arguing that evidence about Childress abusing his girlfriend was inadmissible other-acts evidence going only to a propensity for domestic violence. The court denied the motion, finding the testimony relevant to explain why QMS recanted her initial accusation and that, given the facts of this case, its probative value outweighed any prejudice to Childress. The court noted, however, that the testimony opened the door for Childress to present favorable evidence about his relationship with Williams and to impeach QMS with the inconsistencies in her accounts. The jury was not instructed to disregard the evidence.
¶6 Childress, testifying in his own defense, denied having had sexual contact with QMS. Williams did not testify for the defense as she could not be located. The jury found Childress guilty. Although Childress faced sixty years' imprisonment, the court imposed a thirty-year sentence, twenty years' initial confinement and ten years' extended supervision.
¶7 Postconviction, Childress moved for resentencing, arguing that trial counsel was ineffective for making a sentencing argument that was more harmful than helpful. The court denied the motion without a hearing. Childress appeals.
¶8 We will not reverse the denial of a mistrial motion absent a clear showing of an erroneous exercise of discretion. State v. Ross , 2003 WI App 27, ¶47, 260 Wis. 2d 291, 659 N.W.2d 122. A proper exercise of discretion entails examining the relevant facts, applying the proper standard of law, and engaging in a rational decision-making process. State v. Bunch , 191 Wis. 2d 501, 506-07, 529 N.W.2d 923 (Ct. App. 1995). The court must determine, in light of the whole proceeding, whether the claimed error was sufficiently prejudicial to warrant a new trial. Ross , 260 Wis. 2d 291, ¶47. Not all errors are, and it is preferable to employ less drastic alternatives. State v. Adams , 221 Wis. 2d 1, 17, 584 N.W.2d 695 (Ct. App. 1998).
¶9 The theory of defense was that QMS's sexual-assault allegations were implausible, incredible, and unsupported by physical evidence. Childress contends the court's mistrial ruling allowed him to be tried on evidence irrelevant to whether he sexually assaulted QMS, that undermined his credibility, and, as the State had not sought pretrial to admit QMS's trial testimony, that he was unprepared for and thus was unable to rebut.
¶10 Other-acts evidence is properly admissible if: it is offered for a permissible purpose, pursuant to WIS. STAT. § 904.04(2) (2017-18)[3] ; it is relevant under the two relevancy requirements in WIS. STAT. § 904.01 ; and its probative value is not substantially outweighed by the risk of unfair prejudice under WIS. STAT. § 904.03. State v. Sullivan , 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). "Unfair prejudice" does not mean mere damage to a party's cause but "a tendency to influence the outcome by improper means." Christensen v. Economy Fire & Cas. Co. , 77 Wis. 2d 50, 61-62, 252 N.W.2d 81 (1977).
¶11 QMS testified that she said she was lying because she was afraid Childress would "hit [Williams] again" if she did not. That testimony may not have been other-acts evidence at all. It explained the context in which she initially recanted her claim of abuse, making it relevant as "part of the panorama of evidence needed to completely describe the crime that occurred and is thereby inextricably intertwined with the crime." See State v. Dukes , 2007 WI App 175, ¶28, 303 Wis. 2d 208, 736 N.W.2d 515.
¶12 Even if it was other-acts evidence, we still see no error. The record reveals no improper propensity argument from that testimony by the State, and the WIS. STAT. § 904.04(2) list of permissible purposes for which other-acts evidence is admissible is illustrative, not exhaustive. State v. Marinez , 2011 WI 12, ¶18, 331 Wis. 2d 568, 797 N.W.2d 399. In addition, the greater-latitude rule permits more liberal admission of other-acts evidence in child sexual-assault cases. See id. , ¶20. The trial court thus reasonably concluded that, because the evidence explained why QMS disavowed her initial allegation, it was more relevant and probative than prejudicial.
¶13 Childress also complains that the State should have filed a pretrial motion to address the admissibility of QMS's testimony. It appears from the record, however, that the prosecutor did not anticipate this aspect of the girl's testimony and, in fact, tried to redirect it.
¶14 He also suggests that the court should have given a curative or limiting jury instruction. A limiting instruction was not requested and Childress does not fault trial counsel for not requesting one. A circuit court has no duty to sua sponte give a particular instruction in the absence of a timely and specific request for one. See Bergeron v. State , 85 Wis. 2d 595, 604, 271 N.W.2d 386 (1978). We also cannot say the trial court erred when there was no basis to tell the jury to disregard evidence that had not been excluded. The trial court reasonably exercised its discretion when it denied Childress' mistrial motion.
¶15 Childress' second claim of error is that his counsel performed ineffectively at sentencing by failing to advocate for him in a professionally reasonable manner. He seeks either resentencing or a Machner[4] hearing.
¶16 To prevail on an ineffective-assistance-of-counsel claim, Childress must show that trial counsel performed deficiently and that he was prejudiced by the deficiency. See Strickland v. Washington , 466 U.S. 668, 687 (1984) ; see also State v. Mayo , 2007 WI 78, ¶33, 301 Wis. 2d 642, 734 N.W.2d 115. "The test for deficient representation is whether counsel's performance fell below objective standards of reasonableness." State v. McMahon , 186 Wis. 2d 68, 80, 519 N.W.2d 621 (Ct. App. 1994). The test for prejudice is whether "our confidence in the outcome is doubted such that the conviction is fundamentally unfair or unreliable." Id. We will uphold the trial court's findings of fact unless they are clearly erroneous, but review de novo whether counsel's performance was deficient and prejudicial. Mayo , 301 Wis. 2d 642, ¶32. This court presumes counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland , 466 U.S. at 690.
¶17 Childress contends that trial counsel's sentencing remarks painted a prejudicially negative portrait of him. Counsel said it appeared during Childress' testimony that he "was going to grasp at straws and use any explanation that seemed helpful." In recounting Childress' criminal record, counsel said that "2008 certainly wasn't a good year for [him]," as he "got caught twice in one year, once while a case was pending," thus ruining his opportunity for a deferred prosecution agreement. One of the cases involved a $275 drug deal, leading counsel to call his client "a pretty terrible drug dealer" because "to mortgage your future for ... 275 bucks is a sad statement." While counsel noted that Childress earned his HSED in prison, he also said that after being released in 2012 and making a few strides at bettering himself, by 2014 he again was "up to no good." Counsel also pointed out that while Childress was "a polite and cordial fellow," he consistently denied accountability and "if he doesn't engage in successful treatment, he could be certainly a [ WIS. STAT. ch.] 980 candidate."
¶18 Counsel should have pointed out, Childress contends, that the PSI concluded that he generally was a low risk to reoffend and reveals his desire to pursue education in the areas of technology or real estate; that he had "relatively few" prior convictions; that his "turn toward religion during the trial" augured positively for his future; and that he voiced his respect for law enforcement and the justice system. Conceding the near impossibility of assessing the weight of an advocate's statement at sentencing or to say exactly what "may have happened" were he represented effectively, Childress nonetheless asserts that "it is obvious ... that counsel's performance may have affected the sentencing."
¶19 Counsel did not desert Childress. He recommended a term of initial confinement less than that requested by the prosecutor and at the lower end of the range the PSI writer recommended; pointed out as mitigating factors Childress' young age and the time already spent in pretrial custody during which he completed a cognitive thinking program; noted that Childress was not a hardened, professional criminal; addressed Childress' continuation of his education while in prison and employment after release; and noted his polite, cordial demeanor.
¶20 On this record, a more positive sentencing argument hardly could have made a difference. Much of the information Childress said counsel should have imparted is in the PSI-which the trial court reviewed before sentencing Childress. The court found that QMS, a special needs, learning-disabled child, was particularly vulnerable; Childress' criminal record, which included physical violence against a woman, was an aggravating factor; Childress' claim that he revered women was inconsistent with that record; Childress' claim of being a good parent was at odds with his history of drug dealing and his admitted infrequent contact with his children; he overall was not credible on the witness stand; and the community "clearly" needed protection from him. The court told Childress, "[Y]ou have this vision of yourself that doesn't match with reality. When you say you're reliable, honest, trustworthy, stick up for the weak, the lowly, strong defender of women, sexually assaulting a child isn't sticking up for the weak and the lowly." Even if counsel had emphasized more favorable factors, it seems unlikely that the court would have changed its conclusion and imposed a lighter sentence.
¶21 A reviewing court may dispose of an ineffective assistance claim on either Strickland prong. Id. at 697. Some of counsel's sentencing comments were less than artful. Even were we to agree that they fell below objective standards of reasonableness, Childress' claim that counsel's remarks "may have" affected his sentencing is speculative. Speculation is insufficient to affirmatively prove actual prejudice. See State v. Wirts , 176 Wis. 2d 174, 187, 500 N.W.2d 317 (Ct. App. 1993).
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

The Honorable Timothy G. Dugan presided over the jury trial and sentencing. The Honorable Jeffrey A. Wagner presided over the postconviction hearing.

The original complaint identified QMS as QFS. The amended complaint identifies her as QMS. When she stated her name at trial, she gave a middle name beginning with the letter M.

All references to the Wisconsin Statutes are to the 2017-18 version unless noted.

State v. Machner , 92 Wis. 2d 797, 285 N.W.2d 905 (Ct. App. 1979).