COURT OF APPEALS
DECISION
DATED AND FILED

August 13, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing.  If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.  *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.    2018AP1650-CR**

**STATE OF WISCONSIN**

Cir. Ct. No.  2015CF61

**IN COURT OF APPEALS
DISTRICT I**

---

STATE OF WISCONSIN,

   PLAINTIFF-RESPONDENT,

 V.

ANTWON LAUREL JONES,

   DEFENDANT-APPELLANT.

---

APPEAL from a judgment and orders of the circuit court for Milwaukee County:  ELLEN R. BROSTROM and JEFFREY A. WAGNER, Judges.  *Affirmed*.

Before Kessler, Brennan and Kloppenburg, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Antwon Jones appeals his convictions, entered on a jury's verdict, of two counts of felony murder and one count of felon in possession of a firearm.   Jones argues that trial counsel was ineffective in advising him regarding a plea offer he rejected because counsel failed to inform him that the State could pursue lesser included offenses at trial.   In addition, Jones argues that counsel was ineffective in several respects at trial.   Jones also argues that the evidence was insufficient to support his conviction on the felon in possession of a firearm charge.   We reject all of Jones's arguments and affirm.

## BACKGROUND

¶2     Jones was alleged to have participated in an armed robbery of a man named Michael Taylor that resulted in the shooting deaths of both Taylor and Jones's accomplice Jeffrey White.   Jones was also shot in the incident.   The State charged Jones with two counts of felony murder, with armed robbery as the underlying felony, and one count of felon in possession of a firearm.

¶3     The State offered Jones a plea deal under which Jones would plead guilty to two reduced charges of felony murder, with attempted armed robbery, party to a crime, as the underlying felony, and the State would dismiss and read in the felon in possession of a firearm charge.   Jones rejected the offer and proceeded to trial on the original charges.

¶4     After the close of evidence, the circuit court granted the State's request for a jury instruction on the lesser included offense of felony murder, with attempted armed robbery, party to a crime, as the underlying felony, the same as the reduced charges in the State's plea offer.   The jury found Jones guilty of the lesser included offense on both felony murder charges.   It also found Jones guilty of the felon in possession of a firearm charge.

2

¶5    Jones filed a postconviction motion claiming that trial counsel was ineffective and that the evidence was insufficient to support his conviction on the felon in possession of a firearm charge.  The circuit court denied Jones's motion without an evidentiary hearing, and also denied Jones's motion for reconsideration.[1]

¶6    We reference additional facts as needed in the discussion section below.

## DISCUSSION

### *A.  Ineffective Assistance of Trial Counsel*

¶7    We begin with Jones's ineffective assistance of trial counsel claims. In reviewing whether the circuit court was required to hold an evidentiary hearing on those claims, we examine whether the postconviction motion "on its face alleges sufficient material facts that, if true, would entitle the defendant to relief." *State v. Allen*, 2004 WI 106, ¶9, 274 Wis. 2d 568, 682 N.W.2d 433.  This presents a question of law that we review *de novo*.  *Id.*  "If the motion raises such facts, the circuit court must hold an evidentiary hearing."  *Id.*  However, the court need not hold a hearing "if the motion does not raise facts sufficient to entitle the movant to relief, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief."  *Id.*

---

[1] The Honorable Ellen R. Brostrom presided over trial and entered the judgment of conviction.  The Honorable Jeffrey A. Wagner entered the orders denying the motion for postconviction relief and the motion for reconsideration.

3

¶8 Applying these standards here, we conclude for the reasons that follow that the circuit court properly rejected each of Jones's ineffective assistance claims without an evidentiary hearing.

¶9 To demonstrate ineffective assistance of counsel, a defendant must establish both (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. ***Strickland v. Washington***, 466 U.S. 668, 687 (1984). We need not address both components of the inquiry if the defendant makes an insufficient showing on one. *See **id.*** at 697.

¶10 As to deficient performance, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." ***Id.*** at 688. The court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." ***Id.*** at 689.

¶11 As to prejudice, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." ***Id.*** at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***Id.*** "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome." ***Id.*** at 693.

*1. Whether Trial Counsel Was Ineffective When Jones Rejected the Plea Offer*

¶12 Jones first contends that trial counsel was ineffective in advising him on the State's plea offer because counsel failed to inform him that the State could pursue lesser included offenses at trial. Jones alleged in his postconviction motion that, because counsel failed to provide this information, Jones incorrectly believed that the State would need to prove a *completed* armed robbery at a trial. Jones

4

further alleged that, had he understood that the State could pursue the lesser included offense of felony murder based on *attempted* armed robbery, he would have accepted the State's plea offer instead of going to trial.

¶13     We conclude that, regardless of any possible prejudice, Jones fails to establish that counsel's alleged failure to provide lesser included offense information was deficient performance.  Jones's allegations assume that, when counsel advises a defendant on a plea offer, counsel necessarily has the duty to inform the defendant that the State might pursue lesser included offenses at a trial. However, Jones provides no legal authority stating this proposition.  Absent such authority, we decline to adopt a general rule as to counsel's duties in this respect. *See Strickland* at 690 ("[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.").

¶14     We are uncertain if Jones means to make an alternative argument that, *given the particular circumstances here*, no reasonable counsel would have failed to inform Jones that the State could pursue certain lesser included offenses at trial.  If Jones means to make that argument, we conclude that it is insufficiently developed to overcome the strong presumption that counsel's conduct was reasonable.

### 2. *Whether Trial Counsel Was Ineffective at Trial*

¶15     We turn to Jones's contention that trial counsel was ineffective at trial.  Jones argues that trial counsel was ineffective by:  (1) failing to object to certain testimony as hearsay; (2) conducting inadequate cross-examination of two of the State's witnesses; (3) failing to sufficiently challenge text message evidence the State used to incriminate Jones; and (4) failing to adequately challenge the

State's theory that Jones possessed a firearm. Before discussing these arguments, we provide additional facts from the trial as context.

¶16    Jones's counsel, understandably, did not dispute Jones's presence during the shooting at Taylor's residence. Jones's presence at the scene was established by DNA evidence. This included evidence showing that Jones was a source of DNA from blood found at the scene, and that Taylor was the source of DNA from blood found on one of Jones's shoes. Additionally, an eyewitness in the vicinity of Taylor's residence testified that he saw a man he identified as Jones running out of the residence shortly after he heard gunshots.

¶17    Thus, rather than dispute Jones's presence during the shooting, counsel argued that the State failed to prove that Jones had any intent or knowledge of a plan to commit a robbery. Counsel asserted that Jones went to Taylor's residence only to purchase drugs. In addition, counsel argued that the State failed to prove that Jones shot Taylor or otherwise possessed a firearm. No guns used in the shooting were recovered by police.

*a. Lack of Hearsay Objection*

¶18    We turn to Jones's argument that trial counsel was ineffective by failing to object to hearsay. One of the State's witnesses, Ivori Winston, testified that she heard there was a large amount of money, $10,000 or $15,000, at Taylor's house on the day he died. Jones argues that counsel should have objected to this testimony. He asserts that it was hearsay that was essential to the State's case as "the main evidence produced supporting the idea that sufficient money existed in the house to make the house a potential target for armed robbery." In essence, Jones argues that this testimony was highly prejudicial because, without it, there

was little proof that Jones was attempting to rob Taylor when Taylor and White were shot and killed.

¶19 We will assume, without deciding, that trial counsel should have objected to this testimony as hearsay, and that the testimony should have been excluded as such. Regardless, we conclude that the record conclusively demonstrates that Jones cannot establish prejudice because there is no reasonable probability that the jury's verdicts would have been different in the absence of this testimony.

¶20 To begin, this testimony was not, as Jones asserts, "the main evidence produced supporting the idea that sufficient money existed in the house to make the house a potential target for armed robbery." A witness named Q.S., who was dating Taylor and frequently spent the night with him, testified that Taylor sold drugs and that she had seen him handle $5,000 in his home. In addition, a police detective testified that Taylor's residence contained seventy-eight pills, including Oxycodone and Percocet pills, as well as $679 in cash on the day of the shooting. The detective also testified that drug houses often contain large amounts of cash and are targets of robberies.

¶21 Further, Jones's argument that the hearsay testimony resulted in prejudice ignores other significant evidence supporting the State's theory that Jones and White were attempting to commit an armed robbery of Taylor. We need not and do not exhaustively list all of this evidence but will summarize some of it.

¶22 First, the jury heard evidence indicating that Jones and White sought to conceal their identities. When police found White's body, he was dressed in black, and he was wearing gloves, a black knit cap covering the upper portion of

7

his face, and a scarf covering the lower portion of his face. Other evidence, including testimony from the eyewitness who saw Jones run out of Taylor's residence, indicated that Jones was dressed similarly in all black.

¶23 Second, the jury heard testimony from a police detective that "flexi cuffs" were found in White's sweatshirt pocket, and that the detective had seen flexi cuffs used to bind victims' hands in home invasion robberies. The detective also testified that, based on what he saw at the scene, he believed that White was at Taylor's residence to commit a robbery.

¶24 Third, the jury was presented with evidence that, when considered with all of the other circumstances, provided reason to think that Jones, White, and another accomplice, White's brother Bobby, had all worked together to plan and commit a robbery at Taylor's residence. This included evidence that Jones, White, and Bobby were seen together one or two days before the shooting; that Bobby had been inside Taylor's residence on previous occasions; that, on the morning of the shooting, Bobby made sure that a friend of his who lived with Taylor was not at home; and that Jones and Bobby exchanged several calls and a series of text messages around the time of the shooting. The text messages read:

| | |
|---|---|
| [Jones to Bobby:] | "come on." |
| [Bobby to Jones:] | "okay." |
| [Jones to Bobby:] | "wtf." |
| [Bobby to Jones:] | "it's over. He won't come back. I mean he won't come period back. We on PC." |
| [Jones to Bobby:] | "come on, … where you at." |
| [Bobby to Jones:] | "he won't come period back." |
| [Jones to Bobby:] | "so now what?" |

[Bobby to Jones:]        "wait."

[Bobby to Jones:]        "where you at?"

[Bobby to Jones:]        "Dis Bob, Dis Bob, pick up."

¶25    Fourth, the jury heard evidence indicating that Jones and White brought a firearm to Taylor's residence.  This included expert and lay testimony establishing that Taylor kept a Glock type of gun in his residence; that two different types of guns were used in the shooting; and that one of those two gun types matched the Glock type that Taylor kept in his residence.

### b.  Cross-Examination of Witnesses

¶26    Jones contends that trial counsel was ineffective by conducting an inadequate cross-examination of Ivori Winston and Q.S.  In addition to the testimony already described, Q.S. provided context for the shooting because she was present in Taylor's residence at the time.  She testified that she was sleeping in a bedroom when she awoke to loud "knocking" or "hammering" noises that she eventually realized were gunshots, and that she did not leave the bedroom until the police arrived.

¶27    Regardless whether trial counsel was deficient in cross-examining Winston and Q.S., we conclude that Jones fails to sufficiently allege prejudice resulting from counsel's cross-examination of these witnesses.  Jones's postconviction motion lacks allegations as to what Winston's or Q.S.'s answers would have been if counsel had asked additional questions.  Absent such allegations, Jones has not sufficiently alleged a reasonable probability that additional questioning would have led to a different outcome.  Rather, Jones simply speculates as to the possible effects that additional questioning of Winston

or Q.S. might have had on the jury. "[M]ere speculation is insufficient" to show prejudice. *State v. Adams*, 221 Wis. 2d 1, 13, 584 N.W.2d 695 (Ct. App. 1998).

### c. Challenge to Text Messages

¶28 Jones claims that trial counsel was ineffective by failing to sufficiently challenge the series of text messages between Jones and Bobby. This claim has two parts.

¶29 Jones first claims that trial counsel was ineffective by failing to point out how vague the text messages were. We disagree and conclude that the record conclusively demonstrates that counsel was not deficient in this respect. Counsel reasonably challenged the vagueness of the text messages' content by pointing out, through cross-examination and closing arguments, that the messages made no apparent reference to a gun, drugs, a robbery, or other associated terms.

¶30 The second part of Jones's claim is that trial counsel was ineffective by failing to present information as to the "true context" of the text messages. As to this part of Jones's claim, we conclude that Jones fails to sufficiently allege both deficient performance and prejudice because his postconviction motion does not state what the "true context" was or how its disclosure would have affected the outcome at trial.

### d. Challenge to State's Theory that Jones Possessed a Firearm

¶31 Jones claims that trial counsel was ineffective by failing to adequately challenge the State's theory that Jones possessed a firearm. This claim has three parts. We address each in turn but first note that at trial the State argued that the evidence showed that Jones, not White, wielded the gun used to shoot Taylor, and that Jones removed both that gun and Taylor's gun from the scene.

¶32    Jones first argues that trial counsel was ineffective by failing to "aggressively present[] or argue[]" that the State lacked direct evidence to support its theory. We disagree and conclude that Jones cannot establish deficient performance on this basis because the record conclusively shows that counsel reasonably challenged the lack of direct evidence. Counsel pointed out this potential weakness in the State's case during opening statements, cross-examination of multiple witnesses, and closing arguments.

¶33    Jones next argues that trial counsel failed to take advantage of ballistics evidence relating to how and where Jones was shot. Jones alleged in his postconviction motion that counsel ineffectively failed to argue to the jury that this evidence "likely eliminated" Jones as a shooter. However, Jones did not allege facts explaining *why* this evidence likely eliminated him as a shooter. Thus, Jones has failed to sufficiently allege deficient performance or prejudice as to the ballistics evidence.

¶34    Third and finally, Jones faults trial counsel for failing to present evidence or argue that Q.S. removed the guns from the scene. As to this argument, we conclude that, regardless whether counsel performed deficiently, Jones fails to sufficiently allege prejudice. Jones's postconviction motion lacks specific allegations as to how counsel might have plausibly shown that Q.S. removed the guns. Rather, as with Jones's claim that counsel was ineffective in

cross-examining Q.S., Jones merely speculates as to what further questioning might have accomplished.[2]

### B. Sufficiency of the Evidence

¶35   We turn to Jones's argument that the evidence was insufficient to support conviction on the felon in possession of a firearm charge.  The elements of this offense are:  (1) that the defendant has been convicted of a felony, and (2) that the defendant possessed a firearm.  ***State v. Black***, 2001 WI 31, ¶18, 242 Wis. 2d 126, 624 N.W.2d 363.  Jones challenges the sufficiency of the evidence only as to the possession element.  We conclude that the evidence was sufficient.

¶36   "[I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt."  ***State v. Poellinger***, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).  "If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it."  ***Id.***

---

[2] Jones's postconviction motion contains similarly speculative allegations regarding counsel's investigation of an alternative explanation for how the guns might have been removed from the scene.  Jones alleged that counsel failed to investigate a witness who claimed to have seen a number of men around a car parked at the rear of Taylor's home "earlier that day"; that counsel did not attempt to locate this witness or determine whether the time period when the car was there correlated with the shooting; and that the men around the car could have been involved in helping Q.S. remove guns from the scene.  Because these allegations merely speculate that further investigation might have produced exculpatory evidence, we address them no further.

¶37     Applying these standards here, we conclude that the jury could reasonably infer that Jones possessed a firearm. First, a police detective testified that White was unlikely to have shot Taylor because the gloves White was wearing were so thick that he could not have fit his finger into the trigger guard of a gun. Second, as already discussed, there was the evidence showing that two guns were used in the shooting and that the police recovered no guns from the scene, meaning that someone who left the scene—most logically Jones—must have removed them. Third, the eyewitness who saw Jones running out of Taylor's residence testified that Jones was "holding something at his waist" that the eyewitness could not identify.

¶38     Jones argues that the evidence was insufficient because there was no direct evidence of possession. Direct evidence was not necessary. "It is well established that a finding of guilt may rest upon evidence that is entirely circumstantial." *Id.* at 501.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.