COURT OF APPEALS
DECISION
DATED AND FILED

November 5, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2018AP2403-CR**

Cir. Ct. No. 2017CF2152

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

ALAN LEE MOORE,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Milwaukee County: JEFFREY A. WAGNER, Judge. *Affirmed*.

Before Kessler, Dugan and Fitzpatrick, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.   Alan Lee Moore appeals a judgment of conviction, following a jury trial, of trafficking a child as a party to a crime.  Moore argues that the trial court erroneously exercised its discretion when it admitted other acts evidence of a previous conviction.  We affirm.

**BACKGROUND**

¶2     On May 8, 2017, Moore was charged with trafficking a child as a party to a crime.  According to the criminal complaint, on or about April 22, 2016, Moore and an accomplice picked up seventeen-year-old "Zuzanna" at a Milwaukee bus stop.[1]  Zuzanna, who had just left her group home, was waiting at a bus stop when a car carrying Moore, his accomplice "Sunnee," and another man approached her.[2]  Zuzanna saw Moore in the back seat of a car holding a firearm in his lap.  Zuzanna was instructed to get in the car, which she did after noticing the gun.  Once in the car, Moore and Sunnee explained that they were taking Zuzanna to Chicago, where she was expected to act as a prostitute.  Moore and Sunnee gave Zuzanna suggestive clothing, withheld food, and advertised her for sex on a prostitution solicitation website.  After a few days in Chicago, Zuzanna escaped and contacted an employee at her group home, who then provided Zuzanna with a bus ticket to Milwaukee.

¶3     Prior to trial, the State moved to admit evidence of Moore's 2009 conviction in Illinois for the crime of keeping a place of juvenile prostitution.  In

---

[1] Both parties refer to the victim by the pseudonym "Zuzanna."  We do the same.

[2] The criminal complaint refers to "Sunnee" by her real name; however, according to Zuzanna's testimony at trial, Zuzanna knew Moore's accomplice as "Sunnee." Accordingly, we refer to the accomplice by the same name.

that case, police in Elmhurst, Illinois responded to a report of suspicious activity at a hotel. Police discovered three minor girls, ages fourteen, sixteen, and seventeen, with three adult males, including Moore. The girls told police that they ran away from their group home in Milwaukee and were at the hotel to act as prostitutes. They also told police that they were advertised on a prostitution solicitation website. One of the girls told police that she gave Moore the money she received from her prostitution activities and that she had intercourse with Moore. She also told police that Moore picked her up from Milwaukee, took her to Chicago, and told her that she would have to "work" for him. Moore was subsequently arrested. Moore gave a statement to Elmhurst police admitting to the allegations.

¶4 The State's motion argued that the details of Moore's 2009 conviction were relevant to prove Moore's intent, motive, plan, and modus operandi. The trial court addressed the motion at Moore's final pretrial hearing, agreeing that pursuant to *State v. Sullivan*, 216 Wis. 2d 768, 576 N.W.2d 30 (1998), evidence of Moore's prior conviction was admissible.

¶5 At trial, Zuzanna testified that in April 2016, she was living at a group home in Milwaukee. Zuzanna stated that she was at a bus stop when a car with two men and a woman approached her. The woman—Sunnee—asked Zuzanna if she wanted to make money. When Zuzanna said "no," Sunnee instructed Zuzanna to get in the car. Zuzanna said that she saw that one of the men—Moore—had a gun in his lap and she entered the car out of fear. Zuzanna stated that they drove down to Chicago. Along the way, Moore and Sunnee told Zuzanna that she would be performing sex acts for money. Zuzanna also testified that Sunnee went through Zuzanna's phone to find pictures of Zuzanna to use on a prostitution solicitation website. Zuzanna further testified that she only completed one act of prostitution and that Moore was angry with her for not making enough

money. Zuzanna stated that Moore withheld food from her for two days, only giving her water and energy drinks to keep her awake. Ultimately, Zuzanna was able to make contact with the leader of her group home in Milwaukee, who then bought Zuzanna a bus ticket back to Milwaukee.

¶6 John Tarpey, a former Illinois law enforcement officer, testified that he investigated the events leading to Moore's 2009 conviction. Tarpey testified that in 2008, while working for the Elmhurst Police Department, the patrol division investigated a "suspicious circumstance" at an Elmhurst hotel. Tarpey stated that the patrol division "brought back two juvenile females," ages fourteen and sixteen, who Tarpey discovered were being prostituted by Moore. Tarpey stated that Moore was subsequently arrested and made a custodial statement admitting that he picked up the girls, along with a third girl, in Wisconsin and drove them down to Illinois, where they stayed at various hotels for ten days. Tarpey testified that Moore admitted to having sex with two of the girls, prostituting them, and paying for their hotel rooms. Tarpey also stated that the girls lived in group homes when Moore found them.

¶7 At the close of evidence, the trial court instructed the jury about its use of other acts evidence:

> Evidence has been presented regarding other conduct of the defendant for which the defendant is not on trial. Specifically, that evidence was presented that the defendant had a—there's testimony—evidence that was received about the defendant in the state of Illinois. You— if you find that this conduct did occur, you should consider it only on the issues of motive, intent, preparation or plan, knowledge, identity, and absence of mistake or accident.
>
> You may not consider this evidence to conclude that the defendant has a certain character or certain character trait, and the defendant acted in conformity with that trait or character with respect to the offense charged in this case.

4

¶8      The jury found Moore guilty as charged.  The trial court sentenced Moore to fifteen years of initial confinement and eight years of extended supervision.

¶9      This appeal follows.

## DISCUSSION

¶10      On appeal Moore contends that the trial court erroneously admitted evidence of Moore's 2009 conviction.  We disagree.

¶11      To determine the admissibility of other acts evidence, a three-step test is employed.  *Sullivan*, 216 Wis. 2d at 771-73.  The first step is an evaluation of whether the evidence is to be introduced for a permissible purpose under WIS. STAT. § 904.04(2) (2017-18).[3]  *Sullivan*, 216 Wis. 2d at 772.  The second step is an evaluation of whether the evidence is relevant under WIS. STAT. § 904.01. *Sullivan*, 216 Wis. 2d at 772.  The third step is an evaluation of whether, as required by WIS. STAT. § 904.03, the probative value of the evidence is outweighed by the danger of unfair prejudice.  *Sullivan*, 216 Wis. 2d at 772-73. In cases involving sex trafficking, the greater latitude rule operates to "facilitate the admissibility of the other acts evidence under the exceptions set forth in WIS. STAT. § 904.04(2)(a)."  *See State v. Dorsey*, 2018 WI 10, ¶33, 379 Wis. 2d 386, 906 N.W.2d 158 (citations and brackets omitted).  When the rule applies, "[trial] courts should admit evidence of other acts with greater latitude under the *Sullivan*

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

analysis to facilitate its use for a permissible purpose." *Dorsey*, 379 Wis. 2d 386, ¶33.

¶12    The admission of evidence is generally a discretionary decision for the trial court. *Sullivan*, 216 Wis. 2d at 780. We will sustain the court's evidentiary ruling if we find that the court "examined the relevant facts; applied a proper standard of law; and using a demonstrative rational process, reached a conclusion that a reasonable judge could reach." *See id.* at 780-81.

¶13    We conclude that the trial court properly admitted evidence of Moore's 2009 conviction for keeping a place of juvenile prostitution. Applying the three-step *Sullivan* test, we note that Moore does not contest that the first step of the *Sullivan* test—whether the evidence was admitted for a permissible purpose—was met.

¶14    As to the second step—whether the other acts evidence is relevant, i.e., relates to a fact or proposition that is of consequence to the action and whether the evidence has probative value—we conclude that the trial court properly determined that the other acts were relevant. Moore does not dispute that the evidence relates to a fact or proposition of consequence, but contends that the evidence lacks probative value because of dissimilarities between the facts of both cases. We disagree. The similarities between the facts of Moore's 2009 case and the case at bar, though not exact, are sufficiently similar. *See State v. Davidson*, 2000 WI 91, ¶72, 236 Wis. 2d 537, 613 N.W.2d 606 (The probative value of the other acts evidence is not dependent on identical prior offenses; rather, it is assessed based on the similarities between the offenses.). In both cases: (1) Moore targeted minor girls who resided at group homes; (2) Moore transported the girls over state lines and instructed them that they were to perform sex acts for

money; (3) Moore collected the money paid to the girls; (4) the girls were advertised for prostitution on a prostitution solicitation website; and (5) Moore solicited clients for the girls to have sex with. We agree with the trial court and the State's analysis that the "evidence of Moore's [2009 conviction] related to whether Moore knowingly participated in trafficking a child, and it showed that he had a modus operandi for doing so which made it more probable that he knowingly and intentionally trafficked Zuzanna. The evidence was relevant[.]"

¶15 With respect to the third step of the *Sullivan* analysis, we agree with the trial court that the probative value of the evidence substantially outweighed the danger of unfair prejudice. Our supreme court has recognized that "similarities between the other crimes evidence and the charged crime may render the other crimes evidence highly probative, outweighing the danger of prejudice." *Davidson*, 236 Wis. 2d 537, ¶75. We have already established that the crimes were similar in place and circumstance. Further, the trial court specifically told the jury not to consider the other acts evidence as proof that Moore "has a certain character or certain character trait, and the defendant acted in conformity with that trait or character with respect to the offense charged in this case." We presume the jury followed the court's instructions, *see State v. Adams*, 221 Wis. 2d 1, 12, 584 N.W.2d 695 (Ct. App. 1998). We conclude therefore, especially in light of the greater latitude rule, that the trial court reasonably exercised its discretion by admitting the other acts evidence.

¶16 For the foregoing reasons, we affirm.

*By the Court.*—Judgment affirmed.

This opinion will not be published. *See* WIS. STAT RULE 809.23(1)(b)5.

7