STATE of Wisconsin, Plaintiff-Respondent,

v.

James D. LAMMERS, Defendant-Appellant.†

Court of Appeals

No. 2008AP2574–CR. Submitted on briefs April 23, 2009.
—Decided August 19, 2009.

2009 WI App 136

(Also reported in 773 N.W.2d 463.)

† Petition to Review denied 12/14/09. Crooks, J., did not participate.

379

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Amelia L. Bizzaro* of *Henak Law Office, S.C.*, Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James M. Freimuth*, assistant attorney general, and *J.B. Van Hollen*, attorney general.

Before Brown, C.J., Neubauer, P.J., and Snyder, J.

¶ 1. SNYDER, J. James D. Lammers appeals from a judgment of conviction for theft, party to a crime, and from an order denying his postconviction motion for relief from that judgment. Lammers contends that prosecutorial misconduct at trial constituted plain error and violated his right to a fair trial. In particular, he asserts that the State's closing argument was fraught with impermissible commentary on the veracity of the trial witnesses and thus usurped the role of the jury as the arbiter of credibility. We disagree and affirm the judgment and order.

## BACKGROUND

¶ 2. This appeal originates from a 1988 jury trial on a charge of theft by fraud as party to a crime, contrary to WIS. STAT. § 943.20(1) (1986–87).[1] Thomas Schluechtermann admitted that he had sold a red 1982 Chevrolet Z28 Camaro, which he knew to be stolen, to Lammers for $1200.[2] Lammers then sold the Camaro to Frank Webster. Webster and Lammers concocted a scheme to report the vehicle stolen in a different community and then collect insurance proceeds.

¶ 3. At trial, Webster testified that he had noticed a loose vehicle identification number (VIN) plate on the dashboard of the car. Lammers first told Webster not to worry about it, but later told Webster the car was stolen. Webster objected to driving a stolen car and Lammers advised him to report it stolen in another county and to make an insurance claim. Lammers said he would cut up the car two weeks before Webster was to report it stolen. Webster returned the car to Lammers so that he could "chop up" the vehicle and dispose of the parts.

¶ 4. According to plan, Webster and a friend, Paul Gottsacker, took a different Camaro to a party in the Milwaukee area and parked nearby. About fifteen minutes later, Webster slipped out and moved the car to a parking spot a block away. He returned to the party, and later that night, left the party with friends and claimed his car was gone. He called the police and reported the

---

[1] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

[2] The record contains references to a 1982 Camaro and a 1983 Camaro. Regardless of this inconsistency, we understand the witnesses to be referring to the red Z28 Camaro that is the subject of the fraudulent insurance claim.

car stolen. He then filed a stolen vehicle claim with his insurance company. The insurer paid Webster $8125 in settlement of the claim.

¶ 5. At trial, Schluechtermann, Webster, and Gottsacker testified. Schluechtermann stated that he and Lammers arranged for Lammers to buy a stolen vehicle, that Lammers paid $1200 for the stolen Camaro, and that Lammers removed the vehicle identification from the stolen Camaro to replace it with one from another car. He also testified that he re-sold several components of the stolen Camaro after Lammers brought him the pieces. Schuechtermann stated that Lammers had told him that he and Webster "were going to pull an insurance job."

¶ 6. Webster explained that he purchased the car from Lammers for $7000 and submitted forms to his insurer stating that he had paid $10,000. Webster's friend, Gottsacker, forged Lammers' name on the insurance paperwork. Webster insisted that he learned the car was stolen property only after he purchased it from Lammers. He then described how he had faked the theft of the Camaro on the night he and friends attended the party near Alverno College. Webster testified that it was Lammers' idea to cut up the vehicle and falsely report it stolen and that he had witnessed Lammers cut the Camaro into pieces.

¶ 7. Gottsacker testified that Webster was going to report the Camaro stolen in Milwaukee because "Milwaukee was a bigger town, it seemed more likely the car would get stolen [there]." He was an eye witness to, and participant in, the concocted vehicle theft. Gottsacker described the events that took place the night of the party at Alverno College. He also testified that Webster told him the Camaro was actually cut into pieces in a barn, and he knew Lammers had a barn.

¶ 8. At the conclusion of the nearly week long trial, the jury found Lammers guilty and he was sentenced. Lammers sought to appeal and the State public defender appointed counsel. Lammers' postconviction motions challenged the search warrant and asserted that the prosecutor's closing arguments at trial were improper. The court denied relief on both motions.

¶ 9. Before briefs were filed in the court of appeals, Lammers' appointed counsel was allowed to withdraw on grounds he had been discharged by Lammers for failing to file motions that counsel considered "both repugnant and imprudent." Lammers proceeded pro se, filing several motions in the court of appeals, all of which were apparently denied. His appellate brief, however, was never filed and this court dismissed his appeal in July 1991.

¶ 10. In 2006, Lammers filed a pro se petition for writ of habeas corpus under *State v. Knight*, 168 Wis. 2d 509, 484 N.W.2d 540 (1992). Lammers sought reinstatement of his right to direct appeal because, he argues, at the time we allowed his appointed appellate counsel to withdraw, Lammers was not competent to proceed pro se. In an order dated June 19, 2007, we agreed. Lammers now presents his direct appeal from his 1988 theft conviction and the postconviction orders denying him relief from that conviction.

## DISCUSSION

¶ 11. Lammers raises one issue on appeal. He contends that prosecutorial misconduct constituted plain error and violated his right to a fair trial. Specifically, he argues that during closing argument at trial, the prosecutor improperly bolstered the credibility and vouched for the veracity of certain witnesses for the State.

¶ 12. "Plain error" means a clear or obvious error, one that likely deprived the defendant of a basic constitutional right. *State v. Frank*, 2002 WI App 31, ¶ 25, 250 Wis. 2d 95, 640 N.W.2d 198 (Ct. App. 2001). WISCONSIN STAT. § 901.03(4) recognizes the plain error doctrine, which allows appellate courts to review errors that were otherwise waived by a party's failure to object. *State v. Mayo*, 2007 WI 78, ¶¶ 28–29, 301 Wis. 2d 642, 734 N.W.2d 115. Plain error is "error so fundamental that a new trial or other relief must be granted even though the action was not objected to at the time." *State v. Sonnenberg*, 117 Wis. 2d 159, 177, 344 N.W.2d 95 (1984) (citation omitted). The error, however, must be "obvious and substantial," and courts should use the plain error doctrine sparingly. *Id.*

¶ 13. There is no bright-line rule for what constitutes plain error. *Virgil v. State*, 84 Wis. 2d 166, 190–91, 267 N.W.2d 852 (1978) (acknowledging that there are no "hard and fast classifications" relative to its application). Rather, the existence of plain error will turn on the facts of the particular case. *Id.* Of particular importance is the quantum of evidence properly admitted and the seriousness of the error involved. *Id.* "[W]here a basic constitutional right has not been extended to the accused," the plain error doctrine should be invoked. *Id.* at 195. Our courts have consistently used this constitutional error standard in determining whether to apply the plain error rule. *State v. King*, 205 Wis. 2d 81, 91, 555 N.W.2d 189 (Ct. App.1996).

¶ 14. If plain error occurred, the burden is on the State to prove that it was harmless beyond a reasonable doubt. *Id.* at 93. We consider several factors in a

harmless error analysis: (1) the frequency of the error, (2) the importance of the erroneously admitted evidence, (3) the presence or absence of corroborating or contradicting evidence, (4) any duplication of properly admitted evidence, (5) the nature of the defense, (6) the nature of the State's case, and (7) the strength of the State's case. *State v. Jorgensen*, 2008 WI 60, ¶ 23, 310 Wis. 2d 138, 754 N.W.2d 77.

¶ 15. Lammers' appellate issue stems from comments made by the prosecutor during closing arguments. He isolates four instances that he claims demonstrate plain error. In each of these four comments, the prosecutor addressed the veracity of certain witnesses. Lammers emphasizes that two key witnesses against him, Schluechtermann and Webster, had "credibility problems," which the jury should have been left to resolve. Schluechtermann was given immunity for his testimony, and Webster was a co-conspirator cooperating with the State after pleading no contest to charges against him. Both were part of a "stolen car ring" operating in the Sheboygan area and both were involved in the theft of or fraudulent claim concerning the red Z28 Camaro. The prosecutor's closing argument, Lammers asserts, "had the effect of transforming the inherently untrustworthy testimony of alleged accomplices into the equivalent of unbiased testimony by citizen witnesses seeking to stamp out crime." Thus, Lammers argues, the prosecutor's improper comments bolstering the credibility of these witnesses could not be considered harmless.

¶ 16. During his closing, the prosecutor argued that Lammers had been a party to the false insurance claim and told the jury, "Well, if you believe Frank Webster, and I will go into later on why I think you

should believe Frank Webster, then [Lammers] knew, he knew ahead of time, it was his idea." The State contends that this comment simply forecasts evidence that has led the State to believe Webster's testimony. We agree that this comment does not vouch for Webster's truthfulness, but rather predicts that after hearing the summation of the evidence, the jury will believe the testimony. A prosecutor may comment on the evidence, argue to a conclusion from the evidence, and may state that the evidence convinces him or her and should convince the jury. *State v. Adams*, 221 Wis. 2d 1, 19, 584 N.W.2d 695 (Ct. App. 1998). Furthermore, the prosecutor delivered on his promise to explain why Webster should be believed, stating in part that (1) Webster testified he knew he would be in trouble if he lied, (2) Webster had already pled no contest and had nothing to gain by lying, and (3) Webster admitted that Lammers had received no money from the insurance settlement. "[A] prosecutor is permitted to comment on the credibility of witnesses as long as that comment is based on evidence presented." *Id.* at 17. There is no plain error here.

¶ 17. Shortly thereafter, the prosecutor stated:

Ladies and gentlemen, they [presumably Schluechtermann and Webster] were told to tell the truth. They were told if we found out they lied for us they would be charged with perjury. They were told if they lied against us they would be charged with perjury, that they should tell the truth. I don't believe you will find that the State has put words in anyone's mouth.

Lammers argues that the prosecutor was clearly vouching for the witnesses, boosting their credibility before the jury.

¶ 18. The State urges us to look at the context of the remark. Leading up to his comments, the prosecu-

tor explained to the jury that they would be instructed to examine two types of testimony: "Two special instructions are going to be given, one, testimony of a witness granted immunity, Tom Schluechtermann has been granted immunity, which means he cannot be prosecuted for his involvement in any crime about which he testified. The testimony should be examined by you with greater care." The prosecutor explained to the jurors that they "should consider whether his testimony may be affected by his own interests." The prosecutor then stated, "The second [special instruction] is the testimony of an alleged co-conspirator, it is alleged here that Frank Webster is a co-conspirator of Jim Lammers." He explained, "[A] verdict of guilty may be based solely on the testimony if it is of such a character taken in connection with all over evidence . . . so as to satisfy you of the guilt of James Lammers beyond a reasonable doubt. Is it corroborated by other evidence?"

 ██

¶ 19. We are convinced that the prosecutor said nothing objectionable thus far. Rather, the prosecutor alerted the jury to possible motives for the testimony given. We observe that the door to this issue was opened on cross-examination, when defense counsel elicited from Webster the terms of his agreement with the State to "fully cooperate" lest his probation be revoked. Upon further cross-examination, Webster stated that the only way he could get in more trouble was by lying on the witness stand. The State is allowed to respond to allegations that its witnesses were coached to lie in exchange for deals with the State. *See, e.g., State v. Kaster,* 148 Wis. 2d 789, 799–800, 436 N.W.2d 891 (Ct. App. 1989). There was no fundamental error; furthermore, "[A]sking a witness whether he [or she] is testi-

fying by agreement is not likely to bolster his [or her] credibility. If anything it is likely to have the opposite effect, by imputing a motive for the witness's testifying as the prosecution wants . . . regardless of the truth." *United States v. Mealy*, 851 F.2d 890, 899 (7th Cir. 1988) (citation omitted). And, finally, the circuit court's instruction to the jury regarding heightened scrutiny of testimony from witnesses granted immunity and witnesses who were co-conspirators was sufficient to dispel any potentially harmful effects of the prosecutor's references to truthful testimony. *See id.* at 900.

¶ 20. The prosecutor returned to this theme again, stating that Schluechtermann "was told by the state agent, by myself, and Lieutenant Adams if you lie for us we will charge you with perjury, if you lie against us we will charge you with perjury. Tell the truth." Lammers contends that this statement references facts not of record and the State concedes that there is no evidence to show that Adams admonished Schluechtermann to tell the truth.

¶ 21. However, the circuit court, in the presence of the jury, granted Schluechtermann immunity and explained that he had three choices: (1) to testify truthfully under oath, (2) to lie under oath and face a perjury charge, or (3) to be confined for refusing to answer questions. Whether one, two, or three state agents told Schluechtermann to tell the truth or face perjury charges is of little consequence in light of the jury's presence during the court's on-the-record warning to Schluechtermann. And, as stated earlier, the jurors were instructed to examine testimony given by a witness with immunity "with greater care," and they were to give such testimony the weight they felt it

deserved. Even accepting, for the sake of argument only, that the prosecutor's statement during his closing was error, it was harmless.

¶ 22. Finally, the prosecutor told the jury: "Ladies and gentlemen, you saw Frank Webster. You saw Paul Gottsacker, I believe that their testimony and their demeanor [were] credible." This comment is the most objectionable of the four. The prosecutor's colloquial use of the phrase "I believe" smacks of vouching for the witnesses. Nonetheless, some courts have held that this phrasing is permissible. *See, e.g., State v. Walsh*, 558 A.2d 1184, 1187 (Me. 1989) ("[T]he role of the prosecutor is to argue for guilt, and [jurors] might just as well read nothing more into 'I believe' than they have already read into the decision to prosecute."); *Mintun v. State*, 966 P.2d 954, 960 (Wyo. 1998) (colloquial phrases such as "I believe" are permissible in the context of discussing the evidence).

¶ 23. There is a fine line between what is and is not permitted concerning the lawyer's personal opinion. Even if there are improper statements by a prosecutor, the statements alone will not be cause to overturn a criminal conviction. *United States v. Young*, 470 U.S. 1, 11 (1985) ("criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone"). Rather, the statements must be looked at in context of the entire trial. *Id.* Here, the prosecutor tempered the appearance that he was imposing his own credibility determination upon the jury by asking the jurors to use their own best judgment in assessing the truthfulness of the witnesses. Specifically, the prosecutor reminded the jurors that they themselves saw Webster and Gottsacker testify and could draw their own conclusions.

389

¶ 24. Also, the prosecutor's comment occurred in the midst of his summation of the evidence. A prosecutor may comment on the credibility of witnesses provided that comment derives from the evidence. *Adams*, 221 Wis. 2d at 17. The prosecutor did an exhaustive review of the evidence and, in this case, his comment about what he believed was tied to the record. We are not persuaded that the remark rises to the level of a fundamental error or that it usurped the role of the jury as arbiter of witness credibility.

## CONCLUSION

¶ 25. We decline to grant Lammers the new trial that he seeks because we conclude the prosecutor's comments did not rise to the level of "plain error" that "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *See Mayo*, 301 Wis. 2d 642, ¶ 43 (citation omitted). The questionable comments by the prosecutor, when taken in context, particularly in light of the prosecutor's references to the record evidence and the court's instructions to the jury, do not warrant a new trial. We affirm the judgment of conviction and the order denying postconviction relief.

*By the Court.*—Judgment and order affirmed.