COURT OF APPEALS
DECISION
DATED AND FILED

December 17, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2237-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2019CF821

IN COURT OF APPEALS
DISTRICT II

STATE OF WISCONSIN,

    PLAINTIFF-RESPONDENT,

V.

STEVEN WILLIAM LUTHER,

    DEFENDANT-APPELLANT.

        APPEAL from a judgment of the circuit court for Sheboygan County: DANIEL J. BOROWSKI, Judge. *Affirmed*.

        Before Neubauer, P.J., Gundrum, and Lazar, JJ.

        **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.   Steven William Luther appeals from a circuit court judgment convicting him of multiple sexual offenses after a jury trial.   Luther argues that his convictions should be reversed because there was insufficient evidence to support the jury's guilty verdicts.   In the alternative, Luther asserts he is entitled to a new trial because the prosecutor allegedly committed plain error in closing arguments.   For the reasons that follow, we affirm.

## BACKGROUND

¶2    After then-13-year-old Anna told police that then-18-year-old Luther had sexually assaulted her, the State charged Luther with three counts of sexual assault, one count of first-degree sexual assault for having sexual intercourse with a child under age 16 by the use or threat of force or violence, and two counts of second-degree sexual assault for having sexual intercourse with a child under age 16 and for having sexual intercourse with an intoxicated person.[1]   The second-degree assault charges contained potential penalty enhancers due to Luther's status as a repeat offender.

¶3    At the three-day jury trial, Anna testified that Luther had taken Anna into his bedroom at his grandparents' house in Sheboygan one night in June 2018. Anna said that Luther forced her to drink alcohol to the point of intoxication, she passed out on his bed, and Luther had penis-to-vagina sexual intercourse with the use of force while Anna was obviously intoxicated and despite her efforts to resist him when she regained consciousness.   Finally, Anna told the jury that Luther

---

[1]  In order to protect her confidentiality, this court refers to the juvenile by a pseudonym. *See*, *e.g.*, WIS. STAT. Rule 809.19(1)(g) (2023-24).  All references to the Wisconsin Statutes are to the 2023-24 version.

became physically violent with Anna when she tried to resist and remove herself from the scenario.

¶4    Luther moved for a directed verdict at the close of the State's case and moved to dismiss all charges at the close of evidence. The trial court denied both motions. After deliberation, the jury found Luther guilty of all three charged counts. The court imposed three consecutive sentences totaling 55 years of initial confinement in prison followed by 30 years of extended supervision. Luther appeals.

¶5    We include additional facts as necessary to our discussion below.

## DISCUSSION

### I. Sufficiency of the Evidence

¶6    An appellate court reviewing whether the evidence is sufficient to support a conviction "may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt." *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990).

> If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*Id.*

¶7     Luther first argues on appeal that "[the] record lacks evidence of guilt as [Anna]'s credibility was called into question to a point where any of her testimony is unreliable."  For example, Luther asserts, Anna's testimony "was proven to be 100% false" because, although Anna testified that she only used her phone once while in Luther's bedroom, "[t]he certified records introduced at trial prove that [Anna] was consistently using her phone during the time that she would have been blacked out and the assault occurred."  Based on this and other allegedly "false" testimony, Luther argues his convictions must be reversed and acquittals entered because there was insufficient evidence to support the jury's verdicts.

¶8     We first observe that where there are inconsistencies in a witness' testimony, such as with Anna's here, the factfinder can accept portions of the witness' testimony while rejecting other portions.  *See*, *e.g.*, ***Ruiz v. State***, 75 Wis. 2d 230, 232, 249 N.W.2d 277 (1977) (holding where obvious discrepancies exist in a witness' trial testimony or even trial testimony and earlier statements, "that fact in itself does not result in concluding as a matter of law that the witness is wholly incredible").  In all such cases, the jury is to determine the proper weight and credibility to give the witness' testimony.  *See **Kohlhoff v. State***, 85 Wis. 2d 148, 154, 270 N.W.2d 63 (1978) (concluding "[i]nconsistencies and contradictions in a witness' testimony are for the jury to consider in judging credibility and the relative credibility of the witnesses is a decision for the jury.").

¶9     On appeal, we look only to whether there is sufficient evidence to support the inferences possible from the testimony.  *See **Poellinger***, 153 Wis. 2d at 501.  We may not reverse Luther's convictions unless the evidence before the jury was so inadequate and unconvincing that no reasonable jury could have convicted Luther on it.  *See **id.*** at 501, 507.  Here, the jury was presented with Anna's

statement to police in October 2019 and her trial testimony in May 2022, and, as Luther observes, there are inconsistencies and differing details between them. However, while multiple inferences from Anna's testimony were plausible in light of the inconsistencies, we cannot say that a reasonable jury could not have concluded that Luther engaged in the conduct charged. The jury was entitled to give, and indeed may have given, greater weight to Anna's trial testimony than her statement to police, the former of which Anna told the jury was likely more accurate because the intensive counseling Anna underwent to help process her trauma also helped her remember details. There was also testimony at trial from other witnesses who corroborated various portions of Anna's testimony.

¶10     In short, even with the inconsistencies in Anna's accounts of the events on the night in question, there was sufficient evidence offered at trial from which a reasonable jury could convict Luther. Accordingly, we conclude the evidence is not insufficient to sustain a guilty verdict.

## II. Plain Error due to Prosecutorial Misconduct

¶11     Luther contends in the alternative that if we conclude that the evidence was sufficient to support the jury verdicts, he is entitled to a new trial because the prosecutor violated his due process rights. Luther cites to two separate statements by the prosecutor in closing argument that he asserts violated his rights: the first commenting on the completeness of certified Snapchat records presented at trial, and the second offering an opinion as to Anna's credibility. Because Luther neither objected to the prosecutor's comments nor moved for a mistrial, he forfeited these challenges. *See State v. Saunders*, 2011 WI App 156, ¶29 & n.5, 338 Wis. 2d 160, 807 N.W.2d 679. Luther argues that he is

nonetheless entitled to a new trial because the prosecutor's comments amounted to plain error. We disagree.

¶12    The plain error doctrine, recognized in WIS. STAT. § 901.03(4), allows appellate courts to review errors that were otherwise forfeited by a party's failure to object or otherwise preserve the error for review as a matter of right. *See State v. Mayo*, 2007 WI 78, ¶¶28-29, 301 Wis. 2d 642, 734 N.W.2d 115. Wisconsin courts have not articulated a "bright-line rule" or "hard and fast classification" for the types of errors that constitute plain errors. *Id.*, ¶29 (citation omitted). Instead, "the existence of plain error will turn on the facts of the particular case." *State v. Jorgensen*, 2008 WI 60, ¶22, 310 Wis. 2d 138, 754 N.W.2d 77 (quoting *Mayo*, 301 Wis. 2d 642, ¶29). Our supreme court has emphasized that the plain error doctrine should be applied "sparingly" and only when the error is "fundamental, obvious, and substantial[.]" *Jorgensen*, 310 Wis. 2d 138, ¶¶21, 23.

¶13    The defendant asserting plain error has the initial burden to show that the error is fundamental, obvious, and substantial. *Id.*, ¶23. If the defendant makes such a showing, the burden then shifts to the State to show that the error is harmless. *Id.* We independently review the record to determine whether there has been plain error warranting a new trial. *State v. Nelson*, 2021 WI App 2, ¶46, 395 Wis. 2d 585, 954 N.W.2d 11 (2020).

¶14    Arguing plain error, Luther claims that he is entitled to a new trial based on two statements made by the prosecutor in closing arguments, despite not objecting to the statements at trial. The first offending statement, Luther argues, involved the prosecutor pointing out the discrepancies in the Snapchat records provided for Anna's account versus Luther's. The prosecutor stated:

> [I]t was testified to again, the same warrant was sent to Snapchat, they provided two totally different returns: One, they had the conversations for [Anna]'s Snapchat account … and one that … didn't have any conversations for Steven Luther's account. They didn't provide anything …. Obviously, there was a discrepancy from what they had provided originally, so who knows what sort of conversations would be in Steven Luther's account if they had provided that information to everybody.

¶15 Luther also contends that "the prosecutor made an obvious and direct statement about his opinion of [Anna]'s truthfulness" in making the following remark: "Ladies and gentlemen, … it's my belief, based upon the evidence presented in this case, as [Anna] testified throughout the last couple of days here, she spoke that truth, and through her words, she spoke what happened to her."

¶16 "When a defendant alleges that a prosecutor's statements constituted plain error, the test we apply is whether, in the context of the entire record of the trial, the statements 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *State v. Cameron*, 2016 WI App 54, ¶18, 370 Wis. 2d 661, 885 N.W.2d 611 (citation and one set of quotation marks omitted). During closing arguments, a prosecutor is entitled to "comment on the evidence, detail the evidence, argue from it to a conclusion, and state that the evidence convinces him or her and should convince the jurors." *See State v. Adams*, 221 Wis. 2d 1, 19, 584 N.W.2d 695 (Ct. App. 1998). Further, "a prosecutor is permitted to comment on the credibility of witnesses as long as that comment is based on evidence presented." *Id.* at 17. That is what the prosecutor did here with respect to both statements Luther challenges on appeal.

¶17 With respect to the first challenged statement—related to the discrepancies in the two sets of Snapchat records—the prosecutor was simply

"comment[ing] on the evidence" and "argu[ing] from it to a conclusion[.]" *See id.* at 19. To explain further, the jury could have drawn the reasonable inference that there was a discrepancy in the records provided by Snapchat because there did appear to be one. As the State observes in its brief to this court, the records Snapchat provided of Anna's account revealed many exchanges between hers and Luther's accounts from January 2018 to the date of the alleged sexual assaults in June of that year, whereas the records Snapchat provided of Luther's account revealed only a few exchanges between his and Anna's accounts in that same period. The prosecutor was permitted to ask the jury to draw the inference that there was a discrepancy in Snapchat's records because there is no other reasonable explanation for the difference, but the jury remained free to decide whether to draw that inference. The fact that the jury may have made an inference that, although reasonable, Luther does not like, is not a ground for a new trial.

¶18　We similarly reject Luther's assertion that the prosecutor's "obvious and direct statement about his opinion of [Anna]'s truthfulness" "crossed the line." Rather, as "permitted," the prosecutor's "comment on the credibility" was "based on evidence presented." *See id.* at 17. In fact, the prosecutor explicitly expressed in closing arguments that he believed, "based upon the evidence presented in this case, ... [Anna] spoke that truth, and through her words, she spoke what happened to her." In cases such as this, where the victim's credibility is pivotal, prosecutors often do, as they may, comment that the evidence convinces the prosecutor that the victim told the truth. *See id.* This is particularly so in a case such as here, where in both his opening statement and closing argument, the defense called the teenage victim a "l[iar]" and argued that the victim and her mother had concocted the entire assault story.

¶19    After our review of the record of the trial, we are satisfied that the prosecutor's comments were properly tied to the evidence. We further recognize the import of the trial court's instructions to the jury that the attorneys' arguments, conclusions, and opinions are not evidence, that the jury is the sole judge of credibility, and that jurors should draw their own conclusions from the evidence and decide upon their verdict according to the evidence. These instructions, which it is axiomatic that we presume the jurors followed, alleviate the likelihood that jurors placed any significant weight on the prosecutor's comments other than the weight that came from their own independent examination of the evidence. *See Mayo*, 301 Wis. 2d 642, ¶44; *see also Adams*, 221 Wis. 2d at 19.

## CONCLUSION

¶20    In sum, while Luther disagrees with the verdicts and believes that "[the] record lacks evidence of guilt as [Anna]'s credibility was called into question to a point where any of her testimony is unreliable[,]" his belief alone does not carry the day. Here, the record establishes that sufficient evidence was presented to support the verdicts as to all three charges. The jury alone was charged with considering the weight and credibility of the evidence presented, and Luther's dissatisfaction with the fact that it returned guilty verdicts on all three counts does not support reversal of this judgment. There also was no plain error committed in the trial that would justify a new trial. Accordingly, and based on our review of the trial record, we affirm.

        *By the Court.*—Judgment affirmed.

        This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

9